Ruth I. Major
The Law Offices of Ruth I. Major, P.C.
70 West Madison Street, Suite 2020
Chicago, IL 60602
State Bar No. 034992
rmajor@major-law.com
Phone:  312.893.7544

Attorney for Plaintiff Stephen J. Major

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Stephen J. Major, | ) | Case No.: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Bossard, Inc., a Delaware Corporation, | ) | COMPLAINT |
| | ) | |
| Defendant. | ) | JURY DEMAND |

Dated:  November 30, 2020                                                      Respectfully submitted:

By:      *Ruth I. Major*
Ruth I. Major
Attorney for Plaintiff Stephen J. Major

Plaintiff, Stephen Major ("Plaintiff" or "Mr. Major"), by his attorneys, The Law Offices of Ruth I. Major, P.C., for his Complaint against Defendant, Bossard, Inc. ("Defendant" or "Bossard"), alleges as follows:

## INTRODUCTION

1. Stephen Major began his impressive and successful employment with Bossard, Inc. in 2016 as a Territory Sales Manager. During his tenure, Mr. Major exceeded his sales quotas year after year by millions of dollars, tripled the revenue from his accounts, and was able to bring in additional large clients who had never worked with Bossard in the past.

2. In or around early April 2019, Mr. Major advised Bossard that his painful medical conditions necessitated two surgeries, one for his back and one for his hip. Mr. Major had the first surgery on May 1, 2019. Following the surgery, Mr. Major had an extremely difficult time walking requiring him to use a cane. Bossard was aware of Mr. Major's surgery and the resulting challenges but never offered him an accommodation under the Americans with Disabilities Act, 42 U.S.C. §12111 *et seq.* (the "ADA"), or explained that he was entitled to time off if needed for therapy and for his recovery as required under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* (the "FMLA"). Mr. Major had the second surgery on June 12, 2019. Again, Bossard was aware of Mr. Major's surgery and the resulting challenges but never explained that he was entitled to time off if needed under the FMLA. Instead, Bossard terminated Mr. Major's employment less than 3 weeks after his second surgery.

3. At the time of the termination, Eric Juengel, Vice President of Sales and Mr. Major's manager, claimed the owner of Bossard in Switzerland had directed that Mr.

Major's employment be terminated. Mr. Major had never met the owner and had no performance issues. Mr. Major responded that the reason didn't make sense since he had never met the owner of Bossard. Mr. Juengel then shifted the reason, claiming Bossard was making organizational changes and that a representative from Mexico handle Mr. Major's Mexico accounts. Mr. Major said this also didn't make sense because Mr. Major, located in Tucson, Arizona, was significantly closer to the accounts in Mexico which were on the U.S. border, than would be the office in Mexico, which was at least twice as far. Mr. Juengel then stated that Mr. Major's accounts were being transferred to a colleague in Phoenix because the colleague had lost accounts. The colleague had lost a significant portion of his account revenue in recent years but did not have a disability. Bossard would later falsely claim that the accounts were transferred to Mr. Major's manager, Mr. Juengel, and not Mr. Major's colleague.

4. Mr. Major brings claims of unlawful discrimination in violation of the ADA, interference with his rights under the FMLA, as well as retaliation for his attempt to exercise his rights under the FMLA.

## THE PARTIES

5. Plaintiff Stephen Major is a former employee of Defendant Bossard and a citizen of Arizona.

6. Defendant Bossard, Inc. is a Delaware corporation and is a citizen of Delaware. Bossard operates the regional office in Phoenix, Arizona where Mr. Major was employed.

**JURISDICTION AND VENUE**

7. This Court has original jurisdiction over Mr. Major's ADA and FMLA claims pursuant to 28 U.S.C. § 1331.

8. This action properly lies in the District of Arizona pursuant to 28 U.S.C. § 1391(b)(2), in that it arises out of events, including the termination of Mr. Major's employment that occurred in Phoenix, Arizona which is an area in the territory covered by the District of Arizona. The majority of Mr. Major's work was performed in Tucson, Arizona, where he lives, or in Tucson, Arizona or Mexico, where the majority of his clients were located.

**RELEVANT FACTS**

**Plaintiff's Job Performance Was Exemplary
Throughout His Employment**

9. Mr. Major was an exemplary performer in his position as a Territory Sales Manager at Bossard, Inc. since his hiring in 2016, where he was responsible for selling screws and fasteners primarily to original equipment manufacturers and distributors. His customers included Raytheon, Bosch, RainBird, and Honeywell Aerospace, among others.

10. In 2017, his first full year with Bossard, Mr. Major essentially doubled revenues for his region to $1.7 million as a result of his skill and positive relationships with customers and prospective customers.

11. In 2018, Mr. Major continued his successes by increasing his region's revenue to $2.6 million, more than triple the value of the accounts assigned to him at the time of his hire. Mr. Major was able to bring in new customers and accounts, and re-engage former customers who had long since written off Bossard, such as Honeywell Aerospace,

which generated approximately $1 million in sales in 2018, and ComtechEFData, which generated $750,000 in revenues in 2018.

12. Throughout his employment, Mr. Major's performance and accomplishments were recognized by Bossard management. Sales Manager, Eric Juengel, repeatedly acknowledged that Mr. Major was exceeding expectations including far exceeding his sales quota and growing his territory.

### Defendant Becomes Aware of Mr. Major's Disability and Need for FMLA Leave

13. Defendant was aware that throughout his employment, Mr. Major experienced health issues which impacted his mobility.

14. In or about early April 2019, Mr. Major advised his manager, Mr. Juengel, that he would require two surgeries—one for his back and one for his hip. Neither his manager nor Bossard HR explained to Mr. Major his rights under the FMLA and Mr. Major's time off for surgery was not treated as covered under the FMLA.

15. Mr. Major's first surgery occurred May 1, 2019. His second surgery occurred June 12, 2019.

16. Following his surgeries, Bossard managers and Human Resources were aware that Mr. Major was in pain and had difficulty walking and therefore performing his job. Despite Mr. Major's condition and need for intermittent leave, Bossard continued to require Mr. Major to perform his duties as he had prior to his surgeries without any consideration for his post-surgery condition or recovery. Mr. Major was required to regularly drive for more than 5 hours to meet with clients and work more than 12-hour days all while recovering from back surgery in order to meet company standards and his full sales quota.

17. Because Mr. Major was not apprised of his rights under the FMLA, he did not take time off for physical therapy, instead working through the pain. He also did not take any time post-surgery for recovery because he was unaware that he had a right to do so under federal law. Further, he did not receive any reduction to his quota to account for the challenges he was facing performing his job.

18. After accounting for a government shutdown's effect on sales, Mr. Major continued to meet his quota despite his physical condition.

### The Shifting Bases for Termination Were All Pretextual

19. On July 1, 2019, less than 3 weeks after his second surgery and return to work, Mr. Major was summoned to attend a meeting with Mr. Juengel and Jesse Meyers of Human Resources. When Mr. Major arrived, Mr. Juengel began the meeting prior to Mr. Meyer's arrival and advised Mr. Major that his employment was being terminated.

20. Initially, Mr. Juengel stated that the decision was based upon a directive from the owner of Bossard operating out of the Swiss Headquarters.

21. After Mr. Major expressed surprise and disbelief that the CEO would take notice of a single salesperson in Arizona whom he had never met and who was meeting his quota, Mr. Juengel's explanation shifted, instead claiming that Mr. Major's Mexican portfolio (which accounted for only 40% of his overall client portfolio) was being reassigned to an employee in Mexico.

22. Mr. Major expressed surprise over this as well, pointing out that his sales revenues in Mexico were from northern Mexico, the border towns such as Nogales and Juarez, and that the Mexican sales representative, located in Aqua Caliente, two hours north of Mexico City. He explained representative in Mexico would now have at least a 14-hour

drive to meet with clients in Nogales or Juarez, whereas Mr. Major would have only required a 6.5-hour drive.

23. In response, Mr. Juengel shifted to a different explanation, now claiming that because a colleague, Dan Murphy, had lost $2 million in revenue in Las Vegas, Mr. Major's accounts would be shifting to him and Mr. Major's employment would be terminated.

24. Mr. Murphy, who is not disabled, was less qualified that Mr. Major. Mr. Murphy has no experience with accounts in Mexico, lacked the established relationships with clients that Mr. Major had spent years fostering, and had lost a significant portion of the clients he had handled. Subsequently, when contacted by Mr. Major's counsel, Bossard would come up with yet a new explanation, then claiming the accounts were actually transferred to Mr. Major's former manager, Mr. Juengel.

25. At no point during his employment was Mr. Major given any warnings regarding his performance, nor was he placed in a performance improvement plan. Rather, he was constantly informed that he was among the top performers on Bossard's sales staff.

**COUNT I – INTERFERENCE WITH RIGHTS UNDER THE FMLA**

26. Mr. Major restates and reasserts the allegations of paragraphs 1 through 25 as if fully restated herein.

27. The FMLA requires that a covered employer allow an eligible employee to take unpaid leave for specific family and medical reasons. The employee can take up to 12 weeks of such leave in a one-year period, during which the employee's job will be protected and after which the employee will be allowed to return to work.

28. Pursuant to FMLA regulations, 29 C.F.R. § 825.300, "when the employer acquires knowledge that an employee's leave may be for an FMLA–qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances."

29. Pursuant to 29 U.S.C. § 2611(4), Bossard is a covered employer subject to the FMLA because it is a company that employees more than 50 employees.

30. Pursuant to 29 U.S.C. § 2611(2)(A) & (4), Mr. Major was an eligible employee because he had a serious health condition, worked for Bossard for more than a year, had worked in excess of 1,250 hours during the previous 12 months, and more than 50 employees worked in his office.

31. Mr. Major informed Defendant of his upcoming surgeries in or around early April 2019, thus making him eligible for FMLA protections as set forth in 29 U.S.C. § 2612(a)(1)(D).

32. Mr. Major's painful medical condition, surgery, and recovery constituted serious health conditions under the FMLA, 29 U.S.C. § 2611(6) & (11), as his medical conditions involved continuing treatment by a health care provider.

33. Mr. Major provided appropriate notice of his medical condition, and upcoming surgeries. Bossard was aware that Mr. Major had difficulty walking and that he required surgeries yet failed to advise Mr. Major of his rights under FMLA or offer FMLA leave.

34. Mr. Major provided notice of his need to take FMLA leave as soon as it was possible and practical to do so.

35. Had Bossard notified Mr. Major of his FMLA rights at the time he was undergoing surgery, he would have requested FMLA leave to cover his surgery and his recovery from surgery and intermittent FMLA leave to cover time away from work to receive physical therapy, which his physician had recommended but which he did not receive because of his concerns about losing his employment and failing to meet his quota if he took the time off for recovery and therapy.

36. Because Mr. Major did not hold off on returning to work until after a reasonable recovery period, and because Mr. Major did not receive therapy promptly after his surgery, his condition worsened.

37. An employer violates an employee's rights under the FMLA by interfering with an employee's right to take leave under the statute.

38. An employer interferes with an employee's rights under the FMLA by not notifying an employee of his right to FMLA leave when it is on notice of eligibility or potential eligibility for such leave, by not giving his such leave, and by terminating the employee's employment following an attempt to take leave to prevent the employee from using FMLA leave in the future.

39. Shortly after Mr. Major's surgeries, when Defendant was aware or should have been aware that he required FMLA leave, Mr. Major's employment was terminated, which constitutes interference with his rights under the FMLA.

40. Bossard maintains a Human Resources department with at least one staff member, Jesse Meyers, who was aware of Mr. Major's medical problems and was aware that Mr. Major's employment was being terminated yet he never provided Mr. Major with any information about the FMLA at the time of his surgery.

41. Defendant acted with reckless disregard for Mr. Major's rights under the FMLA in interfering with Mr. Major's rights under the FMLA, as Defendant and/or its employees knew that interfering with his rights under the FMLA may violate federal law.

42. Bossard did not have reasonable grounds to believe that the termination of Mr. Major's employment did not violate the FMLA.

43. As a result of Defendant's interference with Mr. Major's rights under the FMLA, Defendant violated the FMLA. From that violation, Mr. Major sustained substantial damages, including loss of back pay and front pay, liquidated damages, and attorney's fees and costs.

**WHEREFORE,** for the foregoing reasons, Plaintiff Stephen Major respectfully requests the entry of a judgment in his favor and against Defendant Bossard, as follows:

A. An award of back pay for the wages, salary, and benefits Mr. Major lost as a result of Defendant Bossard's interference with Mr. Major's rights under the FMLA;

B. An award of front pay for the wages, salary, and benefits Mr. Major will lose in the future as a result of Defendant Bossard's interference with Mr. Major's rights under the FMLA;

C. An award of liquidated damages for Defendant Bossard's reckless disregard for Plaintiff's federally protected rights in interfering with his rights under the FMLA;

D. An award of pre-judgment interest, and of post-judgment interest pursuant to 28 U.S.C. § 1961;

E. Attorney's fees and costs; and

F. Such other, further, and additional relief as the Court deems just in law and in equity.

## COUNT II – RETALIATION FOR ATTEMPTED
## EXERCISE OF RIGHTS UNDER THE FMLA

44. Mr. Major restates and reasserts the allegations of paragraphs 1 through 43 as if fully restated herein.

45. The FMLA allows an employee to take unpaid leave for specific family and medical reasons. The employee can take up to 12 weeks of such leave in a one-year period, during which the employee's job will be protected and after which the employee will be allowed to return to work.

46. Pursuant to 29 U.S.C. § 2611(4), Bossard is an employer subject to the FMLA because it is a company having more than 50 employees.

47. Pursuant to 29 U.S.C. § 2611(2)(A) & (4), Mr. Major was a covered employee eligible to take FMLA leave in January 2020 because he had a serious health condition, he had worked for the company for more than a year, had worked in excess of 1,250 hours during the previous 12 months, and more than 50 employees worked in his office.

48. Mr. Major informed Defendant of his need to take leave permitted under the FMLA to obtain and recover from a necessary surgery in or around early April 2019, thus making him eligible for FMLA protections under 29 U.S.C. § 2612(a)(1)(D), which entitles an eligible employee to leave because of a serious health concern.

49. Mr. Major's painful medical condition, surgery, and recovery constituted serious health conditions under the FMLA, 29 U.S.C. § 2611(6) & (11), as his medical conditions involved continuing treatment by a health care provider.

50. Mr. Major provided appropriate notice of his need to take FMLA leave as he informed the company through conversations with his immediate supervisor as soon as it was possible and practical to do so.

51. When Mr. Major informed Defendant of his need to take FMLA leave, he was engaging in protected activity, as it is defined in federal employment law.

52. Shortly after Mr. Major advised Defendant of the need to take FMLA leave, his employment was terminated.

53. When Mr. Major's employment was terminated, Defendant took a materially adverse employment action against Mr. Major.

54. Mr. Major's protected activity—his needing to take FMLA leave—was a motivating factor in Bossard's decision to take materially adverse action against Mr. Major and to terminate his employment, in that it was a reason why his employment was terminated.

55. Other similarly situated employees who did not attempt to take FMLA leave were not terminated. In fact, a poor performing colleague of Mr. Major's, who did not request time off from work for a serious health condition, was not terminated and received Mr. Major's accounts at the time of Mr. Major's termination.

56. Defendant acted with reckless disregard for Mr. Major's rights under the FMLA in retaliating against Mr. Major for his attempted exercise of his rights under the FMLA, as Defendant and/or its employees knew that retaliating against Mr. Major for his attempted exercise of his rights under the FMLA may violate federal law.

57. As a result of Defendant's retaliation against Mr. Major for his attempted exercise of his rights under the FMLA, Defendant violated the FMLA. From that violation,

Mr. Major sustained substantial damages, including loss of back pay and front pay, liquidated damages, and attorney's fees and costs.

**WHEREFORE,** for the foregoing reasons, Plaintiff Stephen Major respectfully requests the entry of a judgment in his favor and against Defendant Bossard, as follows:

A. An award of back pay for the wages, salary, and benefits Mr. Major lost as a result of Defendant Bossard's retaliation against Mr. Major for his attempted exercise of his rights under the FMLA;

B. An award of front pay for the wages, salary, and benefits Mr. Major will lose in the future as a result of Defendant Bossard's retaliation against Mr. Major for his attempted exercise of his rights under the FMLA;

C. An award of liquidated damages for Defendant Bossard's reckless disregard for Plaintiff's federally protected rights in retaliating against Mr. Major for his attempted exercise of his rights under the FMLA;

D. An award of pre-judgment interest, and of post-judgment interest pursuant to 28 U.S.C. § 1961;

E. Attorney's fees and costs; and

F. Such other, further, and additional relief as the Court deems just in law and in equity.

### COUNT III – DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

58. Mr. Major restates and reasserts the allegations of paragraphs 1 through 57 as if fully restated herein.

59. Defendant Bossard is an employer as defined by the Americans with Disabilities Act, 42 U.S.C. §12111(5), which prohibits discrimination in employment on the basis of disability.

60. Mr. Major was disabled, as defined by 42 U.S.C. §12102(1). Prior to the termination of his employment, his disability was known to his employer.

61. Following his surgeries, Mr. Major was not offered accommodations though Bossard was aware that Mr. Major had medical issues that created challenges for him in performing his job responsibilities and Bossard intentionally failed to advise him of his right to time off, including intermittent time off, as allowed under the FMLA. 29 C.F.R. §825.205 allows for employees to take FMLA leave intermittently or work a reduced schedule.

62. At all material times, Mr. Major met Bossard's legitimate expectations by adequately performing all of his job duties including continuing to meet with clients and meet his sales quotas after accounting for government shutdowns.

63. Bossard discriminated against Mr. Major by terminating his employment for pretextual reasons when the real reason was due to Mr. Major's disability.

64. Bossard discriminated against Mr. Major by reassigning his portfolio to a similarly situated, though underperforming, non-disabled employee.

65. Non-disabled employees who were poor performers were not terminated from their employment positions though Mr. Major was.

66. Mr. Major timely filed a Charge of Discrimination against Defendant Bossard with the EEOC. The EEOC which issued Mr. Major a Notice of Right to Sue on his discrimination claims, which was received on September 1, 2020.

67. Bossard's discrimination in violation of the ADA has resulted in damage to Mr. Major, including but not limited to lost wages, lost benefits, loss of future employment commensurate with his experience and professional standing, pain and suffering in the form of emotional distress and deteriorating physical condition.

**WHEREFORE,** for the foregoing reasons, Plaintiff Stephen Major respectfully requests the entry of a judgment in his favor and against Defendant Bossard, as follows:

A. An award of back pay for lost wages, salary, and benefits;

B. An award of front pay for the wages, salary, and benefits Mr. Major will lose in the future as a result of Defendant Bossard's discrimination;

C. Compensatory damages for pain and suffering and loss of earnings potential;

D. Punitive damages;

E. An award of pre-judgment interest, and of post-judgment interest pursuant to 28 U.S.C. § 1961;

F. Attorney's fees and costs; and

G. Such other, further, and additional relief as the Court deems just in law and in equity.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury on all issues so triable.